FILED
2013 Sep-30  AM 10:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **GLENDA SUE VAUGHN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:12-CV-1793-VEH** |
| | ) |
| **CAROLYN COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION[1]

Plaintiff Glenda Sue Vaughn ("Ms. Vaughn") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits

---

[1]Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on September 16, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2] Ms. Vaughn timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Vaughn was 44 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). Tr. 26, 119. She has completed the seventh grade. Tr. 158. Her past work experience includes employment as a nurse's aide, cook, fast food manager, fast food worker, cashier, food server, and laborer. Tr. 54-55, 151-152, 160-67. She claims she became disabled on September 19, 2008, due to anxiety and a left knee injury arising from a car accident. Tr. 151. Her last period of work ended on that same date. *Id.*

On August 28, 2009, Ms. Vaughn protectively filed a Title II application for a period of disability and DIB. Tr. 10. She also protectively filed a Title XVI application for SSI on that date. *Id.* On October 26, 2009, the Commissioner initially denied these claims. *Id.* Ms. Vaughn timely filed a written request for a hearing on

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

November 10, 2009. *Id.* The ALJ conducted a hearing on the matter on November 17, 2010. *Id.* On January 20, 2011, he issued his opinion concluding Ms. Vaughn was not disabled and denying her benefits. Tr. 26. She timely petitioned the Appeals Council to review the decision on January 28, 2011. Tr. 5. On April 18, 2012, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Vaughn filed a Complaint with this court on May 4, 2012, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on August 22, 2012. Doc. 4. Ms. Vaughn filed a supporting brief (Doc. 9) on October 29, 2012, and the Commissioner responded with her own (Doc. 14) on November 28, 2012. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)   whether the claimant can perform his or her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.    Ms. Vaughn met the insured status requirements of the Social Security Act through December 31, 2013.

2.    She had not engaged in substantial gainful activity since September 19, 2008, the alleged disability onset date.

3.    She had the following severe impairments: degenerative joint disease of the left knee; and major depressive disorder, recurrent, moderate.

4.    She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    She had the residual functioning capacity ("RFC") to perform light work with a sit/stand option. She could not climb ladders, ropes, or scaffolds but could occasionally climb ramps and stairs. She could occasionally stoop. She could not kneel, crouch, or crawl. She was restricted to simple routine and repetitive tasks.

6.    She was unable to perform any past relevant work.

7.    She was born on December 15, 1966, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.    She had a marginal education and was able to communicate in English.

9.  Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10. Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11. Ms. Vaughn had not been under a disability, as defined in the Social Security Act, from September 19, 2008, through the date of this decision.

Tr. 12-26.

## ANALYSIS

## I.  Introduction

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

---

[5]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Ms. Vaughn urges this court to reverse the Commissioner's decision to deny her benefits on two grounds: (1) her medical records and testimony reveal psychological impairments that show her to be disabled; and (2) the ALJ's RFC is unsupported by the record evidence. Doc. 9 at 2, 5. The court agrees with the Commissioner that neither of these objections have merit under the relevant standards of review and will thus affirm the decision.

## I.     Substantial evidence supports the ALJ's evaluation of Ms. Vaughn's psychological limitations.

### A.     *The ALJ properly assessed Dr. Walker's opinion*.

Ms. Vaughn first argues that the ALJ improperly afforded "little evidentiary weight" to the opinion of Dr. Guy Walker, ED.D, LPC, a vocational rehabilitation expert who treated her through the Calhoun-Cleburne Mental Health Center ("Calhoun-Cleburne") between August 16, 2007, and February 25, 2008. Doc. 9 at 2 (citing Tr. 242-256). On February 16, 2009, he drafted an "Addendum to Disability Evaluation Report" ("Report") and filled out a "Medical Source Statement (Medical)" ("MSS") two days later, both of which concerned Ms. Vaughn and are thus relevant here. Tr. 429-34. In the Report, he noted that she had not been able to work since her second knee surgery on September 19, 2008. Tr. 429. Dr. Walker then diagnosed the

following mental and emotional limitations:

> Ms. Vaughn's depression level has already increased significantly when I was her counselor over a year ago because of her pain level and activity restrictions after her injury. Since then, her physical limitations have gotten worse and her depression has increased. She has reduced energy and a loss of interest in life. Her anxiety level is worse also, due to pain, activity restrictions, and worry about her family finances since she cannot work and has had her Workers' Compensation benefits stopped. Ms. Vaughn is very frustrated by her inability to contribute to the family finances.

Tr. 430. Dr. Walker further concluded the following about her employment capabilities:

> With regard to employment, the mental and emotional factors make it very difficult for her to concentrate. Her alertness is compromised by the lack of sleep due to her leg pain. She is no longer able to perform the type of work she was doing, which involves extensive standing and walking, as well as occasional lifting of over 20 pounds. Her physical impairments eliminate all of the Medium, Heavy, and Very Heavy categories, which are 40% of the labor market. She is also unable to perform most of the Light category of work because of the standing and walking requirements. Ms Vaughn is not a good candidate for clerical types of employment due to her difficulties with spelling and grammar. In several conversations, I have tried to help Ms. Vaughn discover some sort of employment that she could perform if her leg pain is reduced and she was able to move about better. So far we have not been able to come up with any alternative that would not worsen her symptoms. Unless Ms. Vaughn is able to obtain some significant improvement in her pain and physical limitations, I do not believe she will be able to obtain or maintain employment in the future.

Tr. 430-31.

In his MSS, Dr. Walker offered several conclusions as to Ms. Vaughn's psychological limitations. He first noted that she no degree of impairment in her

ability to ask simple questions or request assistance. Tr. 432. He then concluded that she had a "mild" degree of impairment in the following arenas:

- her ability to get along with coworkers or peers;

- her "constriction of interests";

- her deterioration in personal habits; and

- her ability to make simple work-related decisions.

Tr. 432-33. According to Dr. Walker, Ms. Vaughn had "moderate" impairment in:

- her ability to interact appropriately with the general public;

- her ability to understand, remember, and carry out repetitive tasks;

- her ability to sustain a routine without special supervision;

- her ability to respond appropriately to changes in the work setting; and

- her ability to be aware of normal hazards and take appropriate precautions.

Tr. 432-34. Dr. Walker further opined that Ms. Vaughn had "marked" restrictions or impairments in:

- her daily activities;

- her ability to understand, remember, and carry out simple instructions;

- her ability to understand, remember, and carry out complex instructions;

- her ability to maintain attention and concentration for extended periods;

- her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

- her ability to respond to customary work pressures.

Tr. 433-34. Dr. Walker ultimately concluded that Ms. Vaughn had an "extreme" degree of impairment in her "ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 433. He added that her impairments caused her limitations that lasted or could be expected to last for 12 months or longer at the severity level he indicated. Tr. 434.

In her brief, Ms. Vaughn faults the ALJ for giving Dr. Walker's opinion "little weight" and for instead crediting that of Dr. Robert Summerlin, Ph.D., a licensed pyschologist who examined Ms. Vaughn on one occasion. Doc. 9 at 4. "Generally, a treating doctor's opinion is entitled to more weight than a consulting doctor's." *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam) (citation omitted). Relatedly, a court does not need to defer to a one-time examiner's opinion. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citation omitted). However, the Commissioner correctly observes in her brief that Dr. Walker, as a "licensed professional counselor" and a "vocational rehabilitation expert," was not an "acceptable medical source" under the Regulations. Doc. 14 at 8 (citing 20 C.F.R.

11

§§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5)). The ALJ was thus free to discount Dr. Walker's assessment. *See Johnson v. Apfel*, No. CIV. A. 98-0674-AH-G, 2000 WL 208741, at *3 (S.D. Ala. Feb. 17, 2000) (citation omitted) (holding that a licensed professional counselor was not an "acceptable medical source" under the Regulations); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citations omitted) (holding that the ALJ properly discredited the claimant's chiropractor's opinion because he was not an "acceptable source" and thus his opinion could not establish an impairment for Social Security disability purposes).

**B.**   ***Other record evidence substantially supports the ALJ's assessment of Ms. Vaughn's psychological limitations.***

The ALJ in fact relied on several credible sources in concluding that Ms. Vaughn's psychological limitations were not as dire as Dr. Walker described. As indicated, he gave "substantial weight" to Dr. Summerlin's diagnosis. Tr. 23. Dr. Summerlin examined Ms. Vaughn on October 21, 2009. Tr. 356. He first observed that she drove herself to the appointment, arrived 15 minutes early, and was cooperative throughout the meeting. *Id.* He then recorded that she had been committed twice to a mental health hospital – the first time in 1989 after threatening suicide and the second time a year later "after having taken pills in another suicide

12

gesture." *Id.* He also noted that she was presently an outpatient at Calhoun-Cleburne but was not then taking any psychotropic drugs to address emotional symptoms. *Id.* During his "mental status examination," he made the following observations:

- Ms. Vaughn was "oriented in regards to person, place, time, and circumstance."

- She had no abnormalities in her speech pattern.

- Her attention, concentration, and memory functioning were "well within normal limits."

- Her abstract thinking ability, fund of general information, computational skills, and vocabulary "were reflective of an individual with average intelligence and a high school education."

- Her thought processes were "logical, coherent, and focused," and her thought content was "responsive to questioning."

- When asked to describe her mood, she replied, "Okay."

- Her affect was "broad and appropriate."

Tr. 357. When discussing her emotional issues, Ms. Vaughn reported to Dr. Summerlin that she "has had a difficult time getting over her mother's death" and that her children make frustrating demands on her. *Id.* After considering the information he gleaned from this examination, Dr. Summerlin made the following diagnosis:

- Axis I        Parent-Child Relational Problem

- Axis II       Diagnosis Deferred

- Axis III    General Medical Condition(s): Please See Available Medical Records

- Axis IV    Psychosocial and Environmental Stressors: None Reported

- Axis V    Global Assessment of Functioning: Not Applicable

Tr. 358. He further concluded, "It is my opinion that she does not have a psychological disorder which would cause her to be unemployable. On the basis of that opinion, I believe that her request for benefits should hinge upon physical rather than emotional symptoms." *Id.* The ALJ afforded this opinion "substantial weight" because it was "well supported by his own clinical examinations and testing." Tr. 23. The ALJ also privileged it because Dr. Sumerlin was a specialist in the arena of psychological and mental disorders. *Id.* (citing 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5)).

The ALJ cited other relevant evidence in finding that Ms. Vaughn was not psychologically disabled. Although she had been diagnosed at Calhoun-Cleburne with "major depression, recurrent, moderate," Tr. 377, she testified at her disability hearing that she had not yet seen a doctor to get on medication for her depression. Tr. 42. While she testified that she had taken medication for depression "years ago," *Id.*, she reported to Dr. Summerlin that she was not presently taking any psychotropic drugs. Tr. 356. She further had not "required any recent mental hospitalizations, crisis

14

intervention, inpatient treatment, or counseling by a mental health professional on a continuing basis." Tr. 23. Finally, Dr. Eugene E. Fleece, Ph. D., a State Agency psychologist who reviewed Ms. Vaughn's records, also concluded that she did not have a severe mental impairment. Tr. 359-72. Specifically, while she complained of disabling anxiety, stress, and fatigue, Dr. Fleece determined that these complaints were "not credible" or "beyond normal limits." Tr. 371. Altogether, these facts substantially support the ALJ's assessment of Ms. Vaughn's psychological limitations.

## II.    The ALJ's vocational questions were adequately comprehensive.

Ms. Vaughn next argues that the ALJ's questions to the vocational expert ("VE") were reversibly inadequate. Doc. 9 at 5-6. Specifically, she asserts that the questions did not reflect the evaluation of Dr. Jeffrey C. Davis, M.D, who examined her on at least two occasions (September 15, 2010, and October 20, 2010) for her left knee pain. *Id.* In his treatment notes, Dr. Davis concluded that he did not think Ms. Vaughn could return to a job where she was required to stand all day. Tr. 513. He instead opined that she could "probably tolerate" either "a sedentary type job, or a job she would be allowed to change positions from seated to standing position . . . as long as there was no significant squatting, kneeling, crawling or climbing involved." *Id.*

15

He also endorsed the functional capacity evaluation ("FCE") performed by Mr. Dave
Bledsoe, Tr. 516, an occupational therapist who examined Ms. Vaughn on January
9, 2009. Tr. 284-88. Mr. Bledsoe had concluded in his FCE that Ms. Vaughn could
(1) frequently stand, walk, or sit; (2) occasionally lift 20 lbs, carry 32 lbs (or procure
such weight from 35 inches), push and pull "light/medium" weight, climb stairs,
crouch, or stoop; and (3) rarely kneel. Tr. 285. He further determined that her worker
fitness was "fair."[6] Tr. 288. As Ms. Vaughn notes, the ALJ gave Dr. Davis's opinions
"substantial weight" because it was "well supported by his own clinical examinations
and testing." Doc. 9 at 5 (citing Tr. 24). Ms. Vaughn nevertheless maintains that the
ALJ did not include Dr. Davis's findings – about the types of jobs she could do and
the functional restrictions under which she labored – in his questions to the VE. *Id.*
at 6.

     After reviewing the hearing transcript, the court finds this complaint baseless.
In order for the testimony of a VE "to constitute substantial evidence, the ALJ must

---

[6]In her brief, Ms. Vaughn, relying on Dr. Walker's summary, claims that Mr. Bledsoe's
FCE indicated "restrictions of no work over 5 hours a day with a maximum of 25 hours per
week." *Id.* at 6. She is correct that Dr. Walker characterized Mr. Bledsoe's conclusions this way.
Tr. 429. But, in response, the Commissioner is also correct that Dr. Walker does not reference
how (or where) he derived his interpretation of Mr. Bledsoe's findings. Doc. 14 at 12. Ms.
Vaughn cites generally to that part of the record containing Mr. Bledsoe's FCE, but she does not
pinpoint where his specific conclusion regarding her daily and weekly hours capabilities was
located. *See* Doc. 9 at 6. As the court is unable to find any such reference, it will not consider this
claimed restriction in its analysis.

pose a hypothetical question which comprises all of the claimant's impairments."

*Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam) (citation

omitted). In this case, the ALJ posed the following hypothetical to the VE:

> Let's assume that an individual with the claimant's age, education and work experience who could perform light work, *except that the person would require a sit-stand option*, could never climb ladders, ropes or scaffolds, could only occasionally climb ramps or stairs, occasionally stoop, and never kneel or crouch or crawl. Assume that individual also is restricted to simple routine and repetitive tasks.

Tr. 55 (emphasis added). In light of Dr. Davis's evaluation, this hypothetical is

adequately comprehensive. Ms. Vaughn incorrectly claims that the ALJ's questions

did not reflect Dr. Davis's judgment that Ms. Vaughn would be restricted to "a

sedentary type job, or a job she would be allowed to change positions from seated to

standing position . . . as long as there was no significant squatting, kneeling, crawling

or climbing involved." Tr. 513. By including a sit-stand option, the ALJ <u>did</u>

incorporate Dr. Davis's diagnosis – in fact, Dr. Davis prescribed <u>either</u> a sedentary

position <u>or</u> one with a sit-stand option. Furthermore, the other restrictions the ALJ

included encapsulate the limitations identified by Mr. Bledsoe in his FCE. Given

these facts, the ALJ did not err in his questions to the VE.

## III.   Substantial evidence supports the ALJ's RFC determination.

Ms. Vaughn finally argues that the record supports a more restrictive RFC than

the ALJ derived. Doc. 9 at 6. After considering the evidence, the ALJ concluded that Ms. Vaughn had the RFC "to perform light work[7] with a sit/stand option. She cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. She can occasionally stoop. She cannot kneel, crouch, or crawl. She is restricted to simple routine and repetitive tasks." Tr. 13. Ms. Vaughn contends that "a careful review of the medical records from Dr. Davis and Dr. Sparks provides more restrictive restrictions than 'light.'" Doc. 9 at 6. According to Ms. Vaughn, the ALJ's RFC determination is "not located anywhere in the medical testimony, vocational testimony or claimant's testimony." *Id.*

These conclusory assertions do not notify the court how and why the ALJ's RFC finding was specifically deficient. Further, after reviewing the record evidence provided by Dr. Davis and Dr. Sparks, the court finds that substantial evidence supports the ALJ's RFC finding. The ALJ meticulously reviewed the evidence

---

[7]The Regulations define "light work" in the following manner:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

provided by Dr. Davis and Dr. Sparks. He also extensively reviewed the claimant's testimony, including her daily activities description and her subjective pain complaints. He justified his discounting of her complaints based on several grounds – all uncontested by Ms. Vaughn in her brief. He assigned particular weight to the various medical opinions and explained why he did so. Considered altogether, the ALJ has offered "such relevant evidence as a reasonable person would accept as adequate to support" his RFC conclusion. *Bloodsworth*, 703 F.2d at 1239.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision is due to be **AFFIRMED**.

**DONE** and **ORDERED** this the 30th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

19